UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DOUGLAS J. LUSTIG, as Trustee
in Bankruptcy for Terry Zahuranec,

Plaintiff,

-v-

LINDA J. ZAHURANEC

Defendant,

FRIEDLANDER & FRIEDLANDER, P.C.,

Defendant/Appellant.

DECISION & ORDER

04-CV-6583CJS

---

APPEARANCES

For Plaintiff/Respondent: Warren B. Rosenbaum, Esq.
Shapiro, Rosenbaum & Liebschutz
1100 Crossroads Building
Two State Street
Rochester, New York 14850

For Defendant/Appellant: Edward Y. Crossmore, Esq.
The Crossmore Law Office
115 West Green Street
Ithaca, New York 14850

INTRODUCTION

This is an action in which Plaintiff Douglas J. Lustig, as the Chapter 7 Trustee ("the Trustee") for the bankruptcy estate of Terry Zahuranec ("Mr. Zahuranec"), commenced an adversary proceeding against Linda J. Zahuranec, the debtor's former

spouse ("Mrs. Zahuranec"), and Friedlander & Friedlander, P.C. ("Friedlander"), Mrs. Zahuranec's matrimonial attorneys. Now before the Court is Friedlander's appeal under 28 USC § 158(a) from the Order of the Honorable John C. Ninfo II, U.S. Bankruptcy Judge, entered on November 1, 2004, granting the Trustee's motion for summary judgment. For the reasons that follow, the Court rejects the appeal and affirms and adopts Judge Ninfo's Decision and Order in its entirety.

BACKGROUND

On October 31, 2001, Friedlander, on behalf of Mrs. Zahuranec, commenced an action for a divorce against Mr. Zahuranec in New York State Supreme Court, Chemung County, seeking equitable distribution of the marital property. Subsequently, Mr. Zahuranec received a purchase offer on a parcel of real estate known as 751 E. Church Street, Elmira, New York ("Church Street Property"). Mr. Zahuranec had acquired title to the parcel in April 1999, and held title solely in his name. The sale was completed on July 8, 2003 and generated net proceeds of $62,815.66. On August 26, 2003, Mr. Zahuranec's attorney transferred half of the net sale proceeds, $31,536.86, to Friedlander, as attorneys for Mrs. Zahuranec. Friedlander deposited the check into its attorney trust account.

A few days later, on September 12, 2003, while the matrimonial proceeding was still pending, Mr. Zahuranec filed a Chapter 7 bankruptcy petition. Thereafter, on September 19, 2003, Mrs. Zahuranec instructed Friedlander to withdraw from the trust account the sum of $7,234.23, for its fees, and forward the remainder to her.

Friedlander did as instructed.[1]

On January 5, 2004, at the direction of the Trustee, Mr. Zahuranec's attorney wrote to Friedlander and requested that the sale proceeds be turned over to the Trustee. Friedlander refused, claiming that the proceeds were marital property belonging to Mrs. Friedlander, and were not part of the bankruptcy estate.

On May 14, 2004, the Trustee filed a "Complaint to Avoid Preferential and/or Fraudulent Transfer, For Turnover of Money or Property of the Estate, for Equitable Subordination and Attorney's Fees" in the bankruptcy base pending before Judge Ninfo, seeking relief under 11 U.S.C. §§544, 547, 548, 510(c) and/or New York Debtor and Creditor Law Article 10 and §276-a. The Trustee subsequently moved for summary judgment, seeking the return of the $31,536.86. Friedlander cross-moved for summary judgment, arguing that the sale proceeds were settlement funds belonging to Ms. Zahuranec, upon which the firm had a lien. More specifically, Friedlander claimed that, as to the $7,234.23 which it retained as payment for fees and disbursements, it had a lien on the funds pursuant to New York Judiciary Law § 475, which provides:

> From the commencement of an action…the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination….

---

[1]Mrs. Zahuranec, represented by a new attorney, later petitioned Judge Ninfo to modify the automatic stay of §362 of the Bankruptcy Code, to permit the Zahuranecs to proceed with equitable distribution of the marital assets. Judge Ninfo granted the relief from stay, by order dated February 2, 2004, stating that no enforcement of any stipulation, agreement, or order of equitable distribution could be undertaken or allowed without permission of the Bankruptcy Court. However, no further details concerning the matrimonial action appear in the record.

New York Judiciary Law § 475 (McKinney 2005)[2] Friedlander maintained that, since the funds were subject to the statutory charging lien, the transfer was not avoidable as a preferential payment.

Judge Ninfo issued a Decision and Order on October 20, 2004, granting the trustee's application and denying Friedlander's cross-motion, for the following reasons:

> (1)... it seems clear that the Zahuranecs' matrimonial attorneys were instrumental in bringing about the division of the proceeds of the sale of Church Street in large part to insure that their then-current fees and expenses were paid; (2) there was no formal settlement agreement that was specifically approved by the Matrimonial Court in their pending matrimonial case, only a series of letters between their matrimonial counsel; (3) Friedlander's charging lien, for purposes of Section 545, 547 and 550 of the Bankruptcy Code, came into existence with respect to the net proceeds of the sale of Church Street, only when the legal and equitable interest in one-half of those net proceeds had been transferred from the Debtor to Linda Zahuranec within the meaning and intent of 547(b) and (e); (4) at no time did Friedlander's charging lien under the Judiciary Law attach to Church Street or its net proceeds while legal title to the property and the net proceeds remained in the debtor, and whether legal and equitable title to the net proceeds passed to Linda Zahuranec or Friedlander at the time when a settlement was agreed to or when one-half of the net proceeds were placed in escrow with attorney Denton or with Friedlander, an avoidable preferential transfer under 547(b) had already occurred; (5) it was only after the legal and equitable title to one-half of the net proceeds was transferred by the Debtor to or for the benefit of Linda Zahuranec and Friedlander that the Friedlander charging lien provided for by the Judiciary Law, attached; (6) if the Debtor had filed bankruptcy before attorney Denton had paid over one-half of the net proceeds to Friedlander, this Court would have held the proceeds to be free and clear assets of the Debtor's estate under Section 541; and (7) as legal precedent for the Court's decision, I refer the parties to *O'Keefe vs. Landow, et. al.,* 289 F.2d 465 (2d Cir. 1961).

---

[2]Judiciary Law § 475 also applies to funds created by settlement. *Chadbourne & Parke, LLP v. AB Recur Finans*, 18 A.D.3d 222, 223, 794 N.Y.S.2d 349, 350 (1st Dept. 2005) ("[A] charging lien extends to settlement proceeds.")

Transcript of Oral Decision, pp. 2-3. Friedlander then filed the instant appeal.

STANDARD OF REVIEW

Pursuant to 28 U.S.C. §158, "the district courts of the United States . . . have jurisdiction to hear appeals" "from final judgments, orders, and decrees" of a bankruptcy judge. 28 U.S.C. §158(a)(1). Additionally, as outlined under Rule 8013 of the Federal Rules of Bankruptcy Procedure, "[o]n an appeal the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings," and findings of fact "shall not be set aside unless clearly erroneous." Fed.R.Bankr.P.8013. Moreover,

> [u]nder this standard, the district court is not authorized to engage in independent fact finding and reviews the bankruptcy court's findings only for clear error. The findings of fact can only be set aside by the district court when, after reviewing the evidence, the court is left with the firm and definite conviction that a mistake has been committed.

*Bagel Bros. Maple, Inc. v. Ohio Farmers, Inc.*, 279 B.R. 55, 61 ( Bankr. W.D.N.Y. 2003) (citations omitted). However, when a district court is reviewing conclusions of law, a *de novo* standard is applied. *Id.; See also, In re Enron North America Corp.*, 312 B.R. 27, 28 (Bankr. S.D.N.Y. 2004). Accordingly, in a case concerning an appeal of a decision granting summary judgment, this Court must "determine de novo whether there are genuine issues of material fact, drawing all inferences in favor of the non-moving party, and affirming summary judgment only if no reasonable trier of fact could have found for the non-moving party." *In re Rockefeller Center Properties*, 266 B.R. 52, 57 (Bankr. S.D.N.Y. 2001) (citations omitted).

ANALYSIS

The bankruptcy code allows a trustee to recover preferential transfers made by a debtor. In that regard, 11 U.S.C. § 547 states, in relevant part:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property – (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made . . . on or within 90 days before the date of the filing of the [bankruptcy] petition . . . that enables such creditor to receive more than such creditor would receive [in the bankruptcy proceeding].

However, 11 U.S.C. § 547(c)(6) states that the bankruptcy trustee may not avoid a preferential transfer "that is the fixing of a statutory lien that is not avoidable under section 545 of this title." Here, there is no dispute that the payment of sale proceeds to Mrs. Zahuranec was a preferential payment. However, Friedlander maintains that it had a charging lien on the monies pursuant to New York Judiciary Law § 475, set forth above.

In that regard, the Court finds that Friedlander's lien never attached to the sale proceeds, because Mrs. Zahuranec never had a right to the proceeds. That is because

> [i]n New York, a final judgment in a marital action by a court of competent jurisdiction determines the rights between the parties. Domestic Relations Law §236(B)(5)(a) provides in pertinent part that in a marital action, the court shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof *in the final judgment.* In *Leibowits v. Leibowits*, 93 A.D.2d 535, 462 N.Y.S.2d 469, 478(2d Dep't 1983) (O'Connor, J., concurring), Justice O'Connor noted that at no prior point to judgment does the [Domestic Relations Law] itself create any contingent or present vested interests, legal or equitable, by virtue of the parties' marital status or prior to a judgment dissolving their

> union.
>
> The few courts that have addressed the issue have done so in cases where the matrimonial proceeding remained extant at the time of bankruptcy. Those courts have consistently held that prior to judgment the rights of a nondebtor spouse to the debtor's property are no better than that of an unsecured creditor.

*In re Greenwald,* 134 B.R. 729, 731 (Bankr. S.D.N.Y. 1991) (citations omitted, italics in original); *see also, In re Anjum*, 288 B.R. 72, 76 (Bankr. S.D.N.Y. 2003) ("The courts have uniformly held that when a final judgment of divorce has not been entered at the time of a bankruptcy filing, the non-debtor spouse's rights may be no greater than that of a general unsecured creditor."); *In re Cole*, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996) ("The Spouses' respective rights in marital property do not vest under New York law . . . until entry of a judgment dissolving the marriage. If bankruptcy intervenes before the state court enters . . . judgment, the trustee's status as hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property and leaves her with a general unsecured claim.") (citations and internal quotations omitted). Here, no final judgment had been entered in the divorce action as of the date Mr. Zahuranec filed for bankruptcy. Consequently, at most, Mrs. Zahuranec had an inchoate right to the sale proceeds, since no judgment of divorce had been granted. Her inchoate rights, though, were cut off by the filing of the bankruptcy petition.

Friedlander maintains, however, that Mrs. Zahuranec's rights in the sale proceeds were not inchoate upon the filing of the bankruptcy petition. Rather, Friedlander contends that her rights had vested, by virtue of a "settlement" between the parties, although Friedlander does not allege that an actual settlement agreement existed at that

time. At first, Friedlander maintained that its receipt of the check from Mr. Zahuranec's attorney "represented a settlement." (Friedlander Memo in Opposition to Summary Judgment Motion, pp. 1, 4) Then later, Friedlander argued that the settlement occurred earlier, "when the settlement fund was identified," meaning that the settlement occurred "when the settlement funds were [still] in the hands of Mr. Zahuranec's attorney." (Friedlander Appeal Reply Brief pp. 2-3) In this regard, it is clear that New York permits spouses to enter into agreements providing "for the ownership, division or distribution of separate and marital property." New York Domestic Relations Law (DRL) § 236(B)(3). Friedlander thus raises the issue of whether *Greenwald*, *Anjum*, and *Cole*, apply in a situation where, prior to a final judgment of divorce, the spouses divide property pursuant to an agreement under DRL § 236(B)(3). This appears to be an issue of first impression.

However, the Court need not decide the issue, since here there was no valid agreement under DRL § 236(B)(3), which section of law requires that such agreements be "in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded." Instead, there was only a series of letters between counsel. (*See*, Exhibits to Friedlander Affidavit in Opposition to Motion for Summary Judgment.) In the absence of a written DRL § 236(B)(3) agreement, a matrimonial court must provide for the disposition of property in the final judgment of divorce. *See* DRL § 236(B)(5) (Stating that disposition of property shall be provided for in the final judgment, "[e]xcept where the parties have provided in an agreement for the disposition of their property pursuant to subdivision three of this part."); *see also*, *In re*

*Ostashko*, 333 B.R. 625, 632 (E.D.N.Y. 2005) ("Under New York law, a spouse's right to equitable distribution of the marital assets does not vest until a divorce judgment is obtained.") (citing DRL § 236(B)(5)). Consequently, Mrs. Zahuranec never had a vested right in the sale proceeds to which Friedlander's lien could have attached.

CONCLUSION

For all of the foregoing reasons, the Friedlander Firm's appeal is denied and Judge Ninfo's Order Granting The Trustee's Motion for Summary Judgment and Directing Entry of Judgment is affirmed.

So Ordered.

Dated Rochester, New York
January 21, 2006

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge